**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MARIO TENEVAL AVILÉS,

Plaintiff,

v.

LIZA ESTRADA FIGUEROA, et al.,

Defendants

Civil No.: 12-1200 (DRD)

## OPINION AND ORDER

### I. Introduction

Plaintiff Mario Teneval Avilés ("Plaintiff") filed a complaint on February 4, 2016, alleging political discrimination against Defendants Liza Estrada Figueroa ("Estrada Figueroa") in her official and personal capacities and against Mariel Martínez-Ortiz ("Martínez-Ortiz") in her official and personal capacities, as well via supervisory liability (collectively, "Defendants"). *Dkt. No. 1*. Plaintiff brings this action under 42 U.S.C. § 1983, alleging a violation of the First Amendment of the United States Constitution, as well as supplemental claims under Article II, Sections 1, 2, 3, 4, 6, and 7 of the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1803 of the Civil Code of Puerto Rico. *Id.* Defendants now move to dismiss all Section 1983 claims.

### II. Relevant Factual and Procedural Background

Plaintiff is an Official Executive of the Corporación del Fondo del Seguro del Estado ("CFSE") at the Bayamón Regional Office. *Dkt. No. 1*, p. 2, ¶ 1. Plaintiff has been affiliated with the New Progressive Party of Puerto Rico ("NPP") since 1996, the same year he began

working at CFSE. He also ran as an official candidate in the 2008 primaries for the Bayamón District. *Dkt. No. 1*, p. 3, ¶¶ 1-6.  At the time of filing the complaint, Plaintiff was a primary candidate for House of Representative for the Bayamón District. Plaintiff claims that his work colleagues are aware of his political affilation.  *Dkt. No. 1*, p. 4, ¶ 8.

Co-Defendant Martínez-Ortiz is the CFSE Regional Director for the Bayamón Region. *Dkt. No. 1*, p. 4, ¶ 12. Co-Defendant Martínez-Ortiz is an active member of the Popular Democratic Party ("PDP"), which is the main political rival of the NPP. *Dkt. No. 1*, p. 4, ¶ 9. Prior to starting her role as CFSE Regional Director in 2014, she served as Sub-Commissioner for the PDP State Elections Commission from 2010 to 2013. *Id.* at ¶ 10.

Plaintiff claims that Co-Defendant Martínez-Ortiz has at one time falsely accused him of skipping work to participate in political activities, has excluded him from staff meetings without explanation, and has denied his request for five months leave in what Plaintiff believes was an effort to thwart his primary campaign. *Dkt. No. 1*, p. 4-5, ¶¶ 13-19.

Co-Defendant Estrada Figueroa is the Administrator of the CFSE and Co-Defendant Martínez-Ortiz's superior. The complaint states that José E. Ortiz Torres, a non-party in this suit and President of the Asociación Empleados Gerenciales for CFSE (AEG-CFSE), appealed via email to Estrada Figueroa to ask her to grant Plaintiff's vacation request. While the pleadings are fuzzy as to what, if any, response Estrada Figueroa gave to this entreaty, Plaintiff contends that she did not respond and that her inaction was motivated by her political affiliation with the PDP.

Defendants filed a motion to dismiss asserting that there is no absolute right to vacation leave, and therefore, no qualifying adverse action occurred to qualify the described

events as political discrimination. Furthermore, regardless of any political motivations, Defendants argue that they are shielded from these causes of action by qualified immunity.

### III. Standard of Review

Once confronted with an allegation regarding the sufficiency of a complaint, the Court must first turn to Federal Rule of Civil Procedure 8(a), which enumerates the minimum requirements of a valid complaint:

> (1)     a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional supports;
> (2)     a short plain statement of the claim showing that the pleaders is entitled to relief; and
> (3)     a demand for the relief sought which may include relief in the alternative or different types of relief

A motion under Rule 12(b)(6) must be granted when the pleader fails "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss will succeed when the complaint's allegations do not comply with Rule 8(a)(2). However, compliance with Rule 8(a)(2) has been the subject of much debate for decades in the legal community.

The Supreme Court sparked this discussion in 1957, when called upon to evaluate the sufficiency of a complaint:

> In appraising the sufficiency of the complaint [in this case] we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim **unless it appears *beyond a doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.** (emphasis added).

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (overruled by *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007)). This passage, embraced by our highest court, has been interpreted by many judges and commentators to mean that "a wholly conclusory statement of claim would

survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." (alteration in original). *Twombly*, 550 U.S. at 561 (describing the evil created by the controversial *Conley* passage). However, such an interpretation harshly affects a defendant's desire to defend himself in a civil suit. "[T]he threat of discovery expense [would] push costs-conscious defendants to settle even anemic cases." *Id.* at 559. Hence, many other judges and commentators, wary of these negative implications, declined to construe the Supreme Court's words in such a literal manner. The debate between these two schools of thought raged for decades. Finally, this controversy was put to rest by the Supreme Court in 2007: "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 563 (followed by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

The Supreme Court cleared the smoke and established that, in order to comply with Rule 8(a)(2), a complaint must state a "plausible" claim for relief, as opposed to merely stating a "possible" claim for relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, **the complaint has *alleged*—but it has not '*show[n]*'**—that 'the pleader is entitled to relief.'" (emphasis provided). *Iqbal*, 556 U.S. at 679 (using the language of Rule 8(a)(2) to explain plausibility). In order to "'nudge [a claim] across the line from conceivable to plausible,' the complaint must contain enough facts to support a claim for relief." (emphasis provided). *Twombly*, 550 U.S. at 570.

"This plausibility standard has become the 'new normal' in federal civil practice." *Garcia-Catalan v. United States*, 734 F 3d 100, 101 (1st Cir. 2013) (citing *A.G. v. Elsevier, Inc.*, 732 F. 3d 77, 78-79 (1st Cir. 2013)). In other words, while *Conley* (arguably) states that a complaint with no more than conclusory allegations need not contain any supporting facts to

comply with Rule 8(a)(2), both *Iqbal* and *Twombly* take the opposite point of view. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

The doors of discovery only open when a complaint has "factual allegations [that] are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Garcia-Catalan*, 734 F. 3d at 103 (citing *Haley v. City oF Boston*, 657 F. 3d 39, 46 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)); *see also Garcia-Catalan*, 734 F. 3d at 103 ("The circumstances in the complaint create a reasonable expectation that discovery may yield evidence of the government's allegedly tortious conduct"; citing *Ocasio-Hernandez v. Fortuño-Burset*, 640 F. 3d 1, 17 (1st Cir. 2011)). The First Circuit explains the relationship between a complaint's plausibility and discovery in more detail:

> . . . the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleaders case. *See Twombly*, 550 U.S. at 556 (requiring, as a hallmark of plausibility, that a complaint contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence").

*Garcia-Catalan*, 734 F. 3d at 104-05. Notwithstanding, the First Circuit has been cautious when applying the plausibility analysis to certain types of cases. *Id.* at 104 (citing *Menard v. CSX Trandp. Inc.*, 698 F. 3d 40, 45 (1st Cir. 2012)). "Generally speaking, these are cases in which a material part of the information needed [by the plaintiff] is likely to be within defendant's control." *Id.* This caution is not in contravention with the Supreme Court's detailed plausibility standard:

> Because precise knowledge of the chain of events leading to the [claim] may often be unavailable to a plaintiff at this early stage of litigation, we take to heart the Supreme Court's call to "draw on our 'judicial experience and common sense' as we make a contextual judgment about the sufficiency of the

pleadings." *See Sanchez v. Pereira-Castillo*, 590 F. 3d 31, 48 (1st Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

*Ocasio-Hernandez*, 640 F. 3d at 16.

Moreover, both the Supreme Court and the First Circuit have cautioned against equating a plausibility analysis with an analysis of plaintiff's likely success on the merits. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely") (internal quotation marks omitted); *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F. 3d 25, 30 (1st Cir. 2010) (affirming that the plausibility standard assumes properly pleaded facts to be true and are to be read in plaintiff's favor) (citing *Twombly*, 550 U.S. at 556); *see also Ocasio-Hernandez*, 640 F. 3d at 12 (citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegation, 'even if it strikes a savvy judge that actual proof of those facts is improbable'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F. 3d at 29; *see also Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject . . . bald allegations on the ground that they are unrealistic or nonsensical . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

The First Circuit has mapped out the proper methodology to adequately analyze the plausibility of the claims present in a complaint:

> ***Step one***: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. (emphasis provided).

*Schatz v. Republican State Leadership Committee*, 669 F. 3d 50, 55 (1st Cir. 2012) (citing *Ocasio-Hernandez*, 640 F. 3d at 12; *Iqbal*, 556 U.S. 662; and *Twombly*, 550 U.S. at 555.)). This is an exception to the general rule that "a court must accept as true all of the allegations contained in a complaint." *Iqbal*, 556 U.S. at 678. As such, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F. 3d at 12, (citing *Iqbal*, 556 U.S. at 680). Slightly restated, "[a] complaint 'must contain more than a rote recital of the elements of cause of action,' but need not include 'detailed factual allegations.'" *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F. 3d 278, 283 (1st Cir. 2014) (citing *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F. 3d 49, 53 (1st Cir. 2013) (reiterated by *Garcia-Catalan*, 734 F. 3d at 103)). Notwithstanding, a second exception was carved out from *Twombly* by the First Circuit: "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Peñalbert-Rosa v. Fortuño-Burset*, 631 F. 3d 592, 595 (1st Cir. 2011) (citing *Twombly*, 550 U.S. at 557 n.5 ("The border in [*DM Research, Inc. v. College of Am. Pathologists*, 170 F. 3d 53, 56 (1st Cir. 1999)] was the line between the conclusory and the factual. Here it lies between the factually neutral and the factually suggestive. Each must be crossed to either the realm of plausible liability.")). The First Circuit, in a separate case, expounded upon these two exceptions:

> A conclusory allegation . . . is one which simply asserts a legal conclusion, such as "I was retaliated against," not a specific factual allegation, such as "my superior threw a book at me," that merely lacks some surrounding context. *See Ocasio-Hernández*, 640 F. 3d at 13-14. We have held that some allegations may be so "threadbare" that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied. *See Peñalbert-Rosa*, 631 F. 3d at 595-96 (1st Cir. 2011). But this is only the case

where the bareness of the factual allegations makes clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true. *Id.*

*Rodriguez-Vives*, 743 F. 3d at 286.

After duly describing *step one* in detail, the First Circuit continued their meticulous methodology of identifying a complaint's plausibility:

> ***Step two:*** take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. *Ocasio-Hernandez*, 640 F. 3d at 12 (again, discussing *Iqbal* and *Twombly*, among others); *see also S.E.C. v. Tambone*, 597 F. 3d 436, 441-42 (1st Cir. 2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situations' plausibility is a "context-specific" job that compels us "to draw on" our "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. And in performing our review, we realize too that we can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F. 3d 10, 13 n. 2 (1st Cir. 2005); *see also Hayley v. City of Boston*, 657 F. 3d 39, 44, 46 (1st Cir. 2011). (emphasis added).

*Schatz*, 669 F. 3d at 55-56 (footnote omitted). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Iqbal*, 556 U.S. at 682 (citing *Twombly*, 550 U.S. at 567); *see also Id.* at 680 ("Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior. [*Twombly*, 550 U.S.] at 567."). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Peñalbert-Rosa*, 631 F. 3d at 596. Nevertheless, "[n]othing about the plausibility standard requires a court to blind itself to what is obvious." *Grajales v. Puerto Rico Ports Authority*, 682 F. 3d 40, 48 (1st Cir. 2012). When considering a motion to dismiss, the court's inquiry occurs in a two-step process under the

current context-based "plausibility" standard established by *Twombly* and *Iqbal*. "Context-based" means that a plaintiff must allege sufficient facts that comply with the basic elements of cause of action. *See Iqbal*, 556 U.S. at 671-72 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). However, the First Circuit has also cautioned courts that a plausibility analysis should not be done "too mechanically":

> We emphasize that the complaint must be read a whole. *See Elsevier*, 732 F. 3d at 81-83. As we have explained, "[t]here need not be a one-to-one relationship between any single allegation and the necessary element of the cause of action." *Rodríguez-Reyes*, 711 F. 3d at 55. "For pleading purposes, circumstantial evidence often suffices to clarify a protean issue." *Id.* at 56 (internal quotations marks omitted).

*Garcia-Catalan*, 734 F. 3d at 103. Finally, at the expense of overstressing the obvious, "an adequate complaint must include not only a plausible claim but also a plausible defendant." *Peñalbert-Rosa*, 631 F. 3d at 594.

Having presented a summary of the applicable standard under Federal Rule of Civil Procedure 12(b)(6), the Court may address allegations contained in the complaint.

## IV. Discussion

This discussion will proceed in three main parts. First, we will consider the merits of the political discrimination claim with respect to each contested element. Then, we will consider Co-Defendant Estrada Figueroa's alleged supervisory liability, separate from her direct liability as discussed in the first subsection. Finally, we will assess the qualified immunity defense submitted by Martínez-Ortiz.

*a. Political Discrimination*

Plaintiff avers a violation of his First Amendment right under the U.S. Constitution, for alleged acts of political discrimination perpetrated by Defendants. A Section 1983 claim

requires a plaintiff to "allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or law of the United States." *Cepero Rivera v. Fagundo*, 414 F. 3d 124, 129 (1st Cir. 2005) (quoting *Romero-Barcelo v. Hernandez-Agosto*, 75 F. 3d 23, 32 (1st Cir. 1996)). For the sake of Section 1983 claims, Puerto Rico is the functional equivalent of a state. *Grajales*, 682 F. 3d at 46 (1st Cir. 2012) (citing *Santiago v. Puerto Rico*, 655 F. 3d 61, 69 (1st Cir. 2011)).

Because Defendants were acting in their official capacities for a state agency, the color of state law requirement is met. *See West v. Atkins*, 487 U.S. 42, 50 (1988); *see also Otero v. Commonwealth of Puerto Rico Indus. Com'n*, 441 F. 3d 18, 21 (1st Cir. 2006).

With regard to the second prong, Plaintiff claims that Defendants' actions constituted a violation of his First Amendment right to political association. *Dkt. No. 1*, p. 1. To make a prima facie showing of political discrimination one must establish four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Ocasio-Hernández*, F. 3d at 13 (quoting *Lamboy-Ortiz v. Ortiz-Vélez*, 630 F. 3d 228. 239 (1st Cir. 2010)).

However, at the pleading stage a one-to-one factual showing of each element of the prima facie case is not necessary. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F. 3d 49, 54 (1st Cir. 2013). The plausibility standard established in *Twombly*/*Iqbal* is controlling, and therefore, inferences based on "judicial experience and common sense" may be drawn from circumstantial evidence to evaluate the plausibility of a political discrimination claim. *Iqbal*, 556 U.S. at 679. That is not to say the prima facie claim framework is irrelevant— rather it

functions as a "prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes*, 711 F. 3d at 54. Thus, at this point, Plaintiffs need only plead the *plausibility* of a prima facie claim, and only after discovery must they *establish* each element.

>    *i. Awareness of Political Affiliation*

Defendants challenge Plaintiff's allegations with respect to the last three elements of the political discrimination claim. First, they contend that Plaintiff has failed to adequately plead that Defendants were aware of the Plaintiff's political affiliation. *Dkt. No.* 12, p. 6, ¶17. Generally, conclusory allegations that one's political association is well-known will not meet a plaintiff's burden of showing that a defendant had knowledge of her political affiliation. *Jimenez-Gonzalez v. Alvarez-Rubio*, 683 F. Supp. 2d 177, 184 (D.P.R. 2010) (stating that Plaintiffs' claims that they are active members of the PDP, a fact which Defendants' supposedly knew, was insufficient to meet the requisite burden). However, in consideration of the standard that "all reasonable inferences [should be drawn] in the pleader's favor," the court has the discretionary authority, even in the presence of conclusory statements, to consider the totality of the pleaded facts to infer knowledge of a plaintiff's political affiliation. *Ocasio-Hernandez*, 640 F. 3d at 12; *see also Rodríguez-Reyes*, 711 F. 3d at 55 ("There need not be a one-to-one relationship between any single allegation and a necessary element of the cause for action. What counts is the cumulative effect of the [complaint's] factual allegations.") (quoting *Ocasio-Hernanandez*, 640 F. 3d at 14). (internal quotation marks omitted); *see also  Albino v. Municipality of Guayanilla*, 925 F. Supp. 2d 186, 196 (D.P.R. 2013) ("In this case, plaintiff Ruiz did not state a single factual allegation that any defendant was aware of her political affiliation. . . . Taking into account the cumulative effect of the

facts pled, the Court finds that an inference may be drawn that defendant Mayor Arlequin was aware of plaintiff Ruiz's political affiliation . . .").

In this instance, Plaintiff has in fact provided plausible facts as to each defendant's knowledge of his political affiliation. With respect to Co-Defendant Martínez-Ortiz, Plaintiff describes an exchange that took place three months prior to Plaintiff's vacation request in which Martínez-Ortiz chided Plaintiff for missing work to participate in a political event to support Pedro Pierluisi—current NPP Resident Commissioner. *Dkt. No. 1*, p. 4, ¶¶14, 17. This allegation is sufficient for the Court to plausibly infer that Co-Defendant Martínez-Ortiz was aware of Plaintiff's political affiliation.

Slightly more fraught is whether Co-Defendant Estrada Figueroa was aware of Plaintiff's political affiliation. Accepting as true the allegations made in the complaint, Estrada Figueroa became involved in this dispute after José Ortiz Torres, a non-party, appealed to her in an email asking her to override Martínez-Ortiz's denial Plaintiff's vacation request. *Dkt. No. 1*, p. 5, ¶21. As a part of that request, he informed Estrada Figueroa of the purpose of the leave request and of Plaintiff's political party association. *Id.* Accepting as true that she received the email, one can infer that Estrada Figueroa knew of Plaintiff's political affiliation before tacitly affirming Martínez-Ortiz's decision. As such, for the purposes of this motion, the Court finds that Co-Defendant Estrada Figueroa was aware of Plaintiff's political affiliation.

### ii. Adverse Employment Action

Moving to the third prong, we now consider whether an adverse employment action occurred. Adverse employment actions may range from demotion or outright dismissal to lesser events "including denials of promotions, transfers, and failures to recall after layoff . . ."

*Rodriguez-Garcia v. Miranda-Marín*, 610 F. 3d 756, 766 (1st Cir. 2010) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75). Moreover, to qualify as political discrimination a plaintiff must show that "if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view." *Rodriguez-Garcia*, 610 F. 3d at 766 (citing *Bergeron v. Cabral*, 560 F. 3d 1, 8 (1st Cir. 2009); and then quoting *Agosto-de-Feliciano v. Aponte-Roque*, 889 F. 2d 1209, 1218 (1st Cir. 1989)). The First Circuit evaluates "substantial pressure" by looking to whether a plaintiff's work conditions are "unreasonably inferior to the norm for that position" and then requires a plaintiff to "canvass the specific ways in which the plaintiff's job has changed" in order to assess whether the alleged actions meet the severity requirement *Agosto-de-Feliciano v. Aponte-Roque*, 889 F. 2d at 1218; *see also Reyes-Orta v. Puerto Rico Highway and Transp. Authority*, 811 F. 3d 67, 76 (1st Cir. 2016); *Otero v. Commonwealth of Puerto Rico Indus. Com'n*, 441 F. 3d 18, 21 (1st Cir. 2006).

In the instance case, the Court finds that Plaintiff's allegations meet the severity threshold, in part. Plaintiff relies on three main allegations to support his claim of political discrimination by Martínez-Ortiz: (1) exclusion from managerial meetings (*Dkt No. 1*, p. 4, ¶13), (2) persistent harassment from Martínez-Ortiz during work hours regarding his political activism (*Dkt No. 1*, p. 4, ¶15), and (3) a denied vacation request, impeding his ability to run for public office (*Dkt No. 1*, p. 5, ¶18). While it is true that our brother courts have found that a denied vacation request does not constitute an adverse employment action[1], our analysis must be specific to the facts at hand. *Agosto-de-Feliciano*, 889 F. 2d at 1218. The present situation is distinct from other cases because the denied vacation request (1) did not happen in

---

[1] *See, e.g.*, *Kaur v. New York City Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 332, 2010 WL 64284 9S.D.N.Y. 2010); *Murphy v. The McGraw–Hill Companies, Inc.*, No. 02–40136, 2003 WL 21788979, *4 (S.D.Iowa July 30, 2003)

isolation, *see Barton v. Clancy,* 632 F.3d 9, 29–30 (1st Cir. 2009) ("a campaign of minor harassments, including removing plaintiff's long distance phone line, denying requests for vacation time, confining duties to paperwork, and not allowing her to change lunch hour, was sufficient to support a First Amendment claim (citing *Pieczynski v. Duffy,* 875 F.2d 1331, 1335–36 (7th Cir. 1989)), and (2) has the effect of curtailing the exercise of a right superior to and independent of a potential right to vacation time.  Thus, the denied vacation request carries considerable weight in assessing the plausibility of this political discrimination claim. Taken in their totality, particularly the combined effects of pointed political harassment and the denied vacation, the aforementioned actions are enough to plausibly claim an adverse employment action occurred.

However, this finding only applies to Co-Defendant Martínez-Ortiz. Unlike Martínez-Ortiz, claims against Estrada Figueroa stem from a single instance of inaction. *See supra* p. 12. Furthermore, the pleadings do not suggest that Martínez-Ortiz's decision was necessarily outside the norm. *See Dkt. No. 14,* p. 9 n.4. Absent the context of other potentially discriminatory allegations or room to infer inferior treatment, this single act is not sufficient to meet the severity threshold for an adverse employment action, and the alleged facts do not plausibly support this element of the claim.  Thus, the political discrimination claim against Liza Estrada Figueroa is **DISMISSED.** The remaining analysis in this section applies exclusively to Martínez-Ortiz.

### iii. Political Animus

Finally, this Court moves to consider whether political affiliation was a moving factor in the adverse employment action.  For pleading purposes, circumstantial evidence often suffices to clarify "a protean issue such as an actor's motive or intent." *Rodriguez-Reyes*, 711

F. 3d at 56 (quoting *Anthony v. Sundlun*, 952 F. 2d 603, 605 (1st Cir. 1991). Furthermore, the plausibility threshold "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the illegal conduct." *Ocasio–Hernández,* 640 F.3d at 17 (quoting *Twombly,* 550 U.S. at 556). Though the complaint presents no facts which evidenced a direct causal link, Co-Defendant Martínez-Ortiz's harassment did focus specifically on Plaintiff's political activity. *Dkt. No. 1*, p. 4, ¶¶14-15. In *Rodriguez-Reyes*, the First Circuit also takes into consideration the timing of the alleged adverse action in assessing causation. 711 F. 3d at 56. In this case, within months of her trust appointment by the PDP as Regional Director, Co-Defendant Martínez-Ortiz began making politically charged accusations against Plaintiff. *Dkt. No. 1*, p. 4, ¶¶12-15. Additionally, the First Circuit looks to nondiscriminatory explanations offered by nonmoving parties as a factor in its determination. *Rodriguez-Reyes*, 711 F. 3d at 57. With regard to the denied vacation request, Defendant cites concerns of a drop in efficiency if Plaintiff were to be absent for several months. *Dkt. No. 12*, p. 8, ¶21. However, the pleadings remain silent as to any nondiscriminatory reason for the politically charged accusations and Plaintiff's sudden exclusion from managerial meetings. *Dkt. No. 1*, p. 4, ¶13. Viewing the facts in their totality and in light most favorable to Plaintiff, the pleadings provide sufficient grounds to meet the plausibility requirements of the fourth and final element of the test.

In sum, this Court finds that Plaintiff has adequately pled a case for political discrimination against Co-Defendant Martínez-Ortiz. Notwithstanding our findings, Plaintiff's complaint left the Court wanting. Moving forward, neither the boost of weak circumstantial evidence nor mere plausibility will be enough to sustain this claim throughout the life of the action. *See Grajales*, 682 F. 3d at 50. But for today, it will suffice.

*b.  Supervisory Liability*

Defendants also assert that Plaintiff has failed to make a claim of supervisory liability against Co-Defendant Estrada Figueroa. There are several layers of rules governing supervisory liability under Section 1983; in general, it is approached as a two-prong test. First, "that one of the supervisor's subordinates abridged the plaintiff's constitutional rights." *Guadalupe-Báez v. Pesquera*, 819 F. 3d 509, 514-15 (1st Cir. 2016); *see also Pineda v. Toomey*, 533 F. 3d 50, 54 (1st Cir. 2008). Second, "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (alterations in Original) (quoting *Lipsett v. Univ. of P.R.*, 902 (1st Cir. 1988)). The second element requires three additional considerations: (1) "that the officials had knowledge of facts," from which (2) "the official[s] can draw the inference," and (3) "that a substantial risk of serious harm exists." *Ramirez-Lluveras v. Rivera-Merced*, 759 F. 3d 10, 20 (1st Cir. 2014) (internal citations omitted).

Finally, a plaintiff must establish a causal connection between the constitutional violation and supervisory acts or omissions. *Id.* at 19. *See also Feliciano-Hernandéz v. Pereira-Castillo*, 663 F. 3d 527 (1st Cir. 2011) ("[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of a subordinate and the action or inaction of the supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation") (quoting *Soto–Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011)) (internal quotation marks omitted). Such a link can be made by showing a "known history of widespread abuse

sufficient to alert a supervisor to ongoing violations." *Gudalupe-Báez*, 819 F. 3d at 515 (quoting *Maldonado-Denis v. Castillo-Rodriguez*, 23 F. 3d 576, 582 (1st Cir. 1994)).

The First Circuit is quick to note that "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference" *Id.*; *see also Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985) (finding no supervisory liability despite police chief's knowledge of complaint of brutality because plaintiff failed to show a pattern which intimated approval of subordinates actions).

Considering these rules as applied to this case, Plaintiff's supervisory liability claim fails to reach the plausibility standard. As discussed above, Co-Defendant Estrada Figueroa's subordinate does indeed abridge Plaintiff's constitutional rights—thus fulfilling the first prong of the test described in *Gudalupe-Báez*. However, Plaintiff falls short of meeting the burdens contained within the second prong of the test. The supervisory liability allegations against Co-Defendant Estrada Figueroa hinge exclusively on the email received from José E. Ortiz Torres.[2] The receipt of this email alone is not enough to plausibly lead Estrada Figueroa to infer that there was a "substantial risk of serious harm to Plaintiff's constitutional rights." *Ramirez-Lluveras*, 759 F. 3d at 20. Furthermore, Plaintiff's supervisory liability claim also falters when one considers the First Circuits warning that "isolated incidences of unconstitutional activity are insufficient to support supervisory liability claims." *Maldonado*, 23 F. 3d at 582. In this case, the pleadings make no attempt to cite to any pattern of abuse within the CFSE. *Cf. Guadalupe-Báez*, 819 F. 3d at 516 (holding that the DOJ report on PRPD patterns and practices of excessive force put the Superintendent on sufficient notice such that one could infer he had assented to the offending conduct).

---

[2] The Court notes that Plaintiff neither includes nor provides direct quotations from the email correspondence.

Motion to dismiss claim of supervisory liability against Liza Estrada Figueroa,

**GRANTED.**

c.  *Qualified Immunity*

Lastly, this Court now moves to consider whether Co-Defendant Martínez-Ortiz is protected by qualified immunity. The qualified immunity doctrine offers public officials complete immunity from suit. *Maldonado v. Fontanes*, 568 F. 3d 263, 268 (1st Cir. 2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). In order to grant qualified immunity, the First Circuit has clearly laid out a two-step process in which the court must engage:

> The two-step procedure for assessing a plea of qualified immunity at the motion to dismiss stage is well-rehearsed. *See, e.g.*, *Feliciano–Hernández v. Pereira–Castillo*, 663 F.3d 527, 532–33 (1st Cir.2011); *Eldredge*, 662 F.3d at 104–05. On the basis of the pleadings, we must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado*, 568 F.3d at 269 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

*Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 8 (1st Cir. 2013).Within the second prong, the First Circuit requires two further considerations. First, whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Maldonado*, 586 F. 3d at 269 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The second consideration looks to the specific facts of the case and asks whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* (citing *Brosseau v. Hougan*, 543 U.S. 194, 198 (2004)). In short, the question is whether a reasonable official have had sufficient notice that his particular actions were contrary to law. *Id.*

Looking to the first prong, the question is whether Plaintiff has presented facts to make out a violation of a constitutional right. Plaintiff has alleged Martínez-Ortiz's actions

constituted political discrimination in violation of his First Amendment rights. As this Court has previously discussed, Plaintiff has made sufficient factual pleadings to meet the plausibility standard for a claim of political discrimination. *See supra* Section IV.A.

Next, we move to consider whether if at the time of the alleged violation, the right was "clearly established." A court must consider controlling authority, both in and out of circuit, to determine whether a right is clearly established. *Barton v. Clancy*, 632 F. 3d 9, 21 (1st Cir. 2011) (citing *Bergeron v. Cabral,* 560 F.3d 1, 11-12 (1st Cir. 2009) (noting that "a plaintiff need not show that the conduct of which he complains is an exact replica of conduct that previously has been held unlawful.")); *see also El Dia, Inc. v. Rossello,* 165 F.3d 106, 110 n. 3 (1st Cir. 1999) (declining to adopt "a hard-and-fast rule" that out-of-circuit precedent is either determinative of or irrelevant to whether a law is clearly established, and instead stating that whether precedent "clearly establishes" a law may depend in part upon "the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court").

Under the First Amendment, government officials are prohibited from taking an adverse employment action against a public employee because of the employee's political affiliation, unless political loyalty is a legitimate requirement for the position in question. *See Rutan*, 497 at 75-76; *Branti v. Finkel*, 445 U.S. 507, 516-518 (1980); *Elrod v. Burns*, 427 U.S. 347, 372-73 (1976) (plurality opinion). Additionally, actions short of demotion or discharge maybe qualify as adverse employment actions. *See Rutan*, 497 U.S. at 75 ("[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees."); *Rodriguez-Garcia*, 610 F. 3d at 766-67 (holding that plaintiff's transfer resulting in a significant reduction in

employment activities constituted an adverse action). Even looking beyond the First Circuit, others have also long prohibited the kind of actions alleged in this case:

> [T]he principle that a campaign of petty harassments can violate the First Amendment (unless *de minimis*) was clearly stated in *Bart,* and should have placed these defendants on notice that false accusations and petty humiliations, if orchestrated into a campaign of political retaliation, are actionable. See *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Kurowski v. Krajewski, supra,* 848 F.2d at 773.

*Pieczynski v. Duffy*, 875 F. 2d 1331, 1336 (7th Cir. 1989).

In light of clear and lengthy legal precedent across circuits and at the Supreme Court level, this Court finds that the right to freely associate with the political party of one's choosing without being subject to discriminatory treatment is a clearly established right.

Thus, Defendant's qualified immunity defense is **DENIED.**

### V. Conclusion

For the above state reasons, the Court orders the following with respect to the motion to dismiss at Docket No. 12: (1) the motion to dismiss both direct and supervisory liability 42 U.S.C. § 1983 claims brought against Co-Defendant Estrada Figueroa is **GRANTED and dismissed with prejudice**; (2) accordingly, pursuant to 28 U.S.C. § 1367, supplemental state law claims against Estrada Figueroa are **dismissed without prejudice** and Plaintiff has leave to refile his claims in local court; and (3) the motion to dismiss with respect to all claims against Co-Defendant Martínez-Ortiz is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of July, 2016.

/s/Daniel R. Domínguez

DANIEL R. DOMÍNGUEZ
U.S. DISTRICT JUDGE